to the second case of the morning, Riley v. Waterman et al., appeal number 23-1253. All right, we're ready to welcome Ms. Miele. You'll have to correct my pronunciation when you come. Good morning, and may it please the Court, my name is Kathryn Miele and I represent Appellant Sean Riley. Mr. Riley suffers from plantar fasciitis and related conditions that cause him to experience often debilitating and severe pain in his feet, ankles, calves, and elsewhere. While he was incarcerated at Wisconsin's secure program facility, he was sent to see multiple specialists over the course of 16 months to treat his condition and manage his pain. Three different specialists on six separate occasions recommended the same or similar course of treatment for Mr. Riley, which was that he wear a certain type of athletic high-top shoe that could provide him proper support and accommodate his custom orthotics. Defendants Appellee's Nurse Sandra McCardle and Nurse Jolinda Waterman were responsible for Mr. Riley's care. They knew about his condition and his persistent pain, they knew about all six of the specialist recommendations, and they were the gatekeepers to allow Mr. Riley to access his recommended treatment. But instead of properly handling Mr. Riley's requests for his recommended shoes, they intentionally and consistently blocked his access to that care, and he never received it. How did they block it? Sure, Your Honor. So the Wisconsin Secure Program Facility has a committee called the Special Needs Committee that is supposed to address certain items that not only implicate medical considerations but security considerations. It's made up of medical personnel and facility staff. And under the prison's policy, Ms. McCardle and Ms. Waterman were required to elevate those requests to the Special Needs Committee for review and evaluation, but based on the record, they never did. They had to send every request up, in your view. So I would say, Your Honor, under the policy, yes, they did not have discretion to not refer his requests up. And if you look at the policy specifically, and it's noted in the appendix at page 120, it says that the care providers shall refer special items for committee review. And later in the policy, it specifically notes that shoes are one of these special items. So we read that policy to say that they were required to elevate Mr. Riley's requests for shoes to that committee for review. Now, could Waterman have referred the shoe issue to the Special Needs Committee? She, of course, says she could not have, and that even if you read the policy the way you all do, practitioners refers. I take this to be her argument. Practitioner refers to McCardle, not to Waterman. What do you say? Yes, Your Honor. Waterman does assert that she did not have the authority to refer the request to the Special Needs Committee, but a reasonable juror could, based on this record, conclude otherwise. And I'd point the court to the fact that Ms. Waterman herself answered many, if not most, of Mr. Riley's health services requests in the record. And when she fills out each one of those forms in response to Mr. Riley, there's a place on that form where she could check the box, or whoever is filling out that form could check the box and refer that request to the Special Needs Committee. Acting on her own, or was she acting in effect as McCardle's agent at that point? I would say she was acting more in effect to McCardle's agent at that point, but the reasonable inference there would be that if she had the authority to fill out the form herself, she also had the authority to check that box and send it along. And the record otherwise establishes that she was directing other health care providers on how to respond to inmates' medical needs. She verbalized her intent for Mr. Riley not to get the shoes, and she also told a care provider not to make notes about shoes. So, again, the inference there being that if she had the authority to tell a care provider what not to do, she also had the authority to tell the provider what to do, which fits with her explanation that she's the HSU manager, and I believe in her own words, responsible for overseeing Mr. Riley's care. The office manager who, by accretion if you want, becomes the boss of all of the health care professions. Is that how you're trying to characterize her? Yes, Your Honor. I think a reasonable juror could make that inference. She was health services unit manager? Yes. Is she a supervisor of McArdle or no, not in the structure of this prison? Your Honor, I believe she is a supervisor of McArdle specifically, and Ms. McArdle noted in her proposed findings of facts in the district court that she actually deferred to Ms. Waterman regarding shoe orders. So I will note that this court has consistently held that to determine if a prison official acts with deliberate indifference, it looks to her subjective state of mind. But because that is often very difficult to determine with direct evidence, this court has also held that there's a certain number of circumstances from which a reasonable juror could infer that a prison official was aware of and disregarded a risk to an inmate, and there are several at issue in this case. I'll highlight four for the court. So first, in repeatedly blocking Mr. Riley's access to his doctor-recommended care, as I just mentioned, Ms. McArdle and Ms. Waterman were actually acting in violation of prison policy. Again, to get the shoes that Mr. Riley's specialist recommended, he needed permission from that committee for an exception to get the adequate shoes. And I'll note that Ms. McArdle and Ms. Waterman relied heavily on the fact that they believed, in their opinion, that he had access to adequate shoes, that he could purchase a pair of shoes from the catalog that, in their opinion, would suffice. But that fact is disputed, and this is its summary judgment. And Mr. Riley has evidence in the record that makes that dispute genuine. So I'll point out to the court that there are shoes in the catalog that are labeled high top, and Mr. Riley told Ms. McArdle and Ms. Waterman that he purchased shoes that were labeled high top, but that when they came in, they didn't adequately address their condition or fit his custom orthotics. And Ms. McArdle and Ms. Waterman read that to say that he purchased the wrong shoes, either erroneously or on purpose, and he just wanted a different pair of shoes. But I think a reasonable juror could read the record differently and say that he did purchase the shoes that were labeled high top, but that when they came in, he tried them, and they didn't adequately fit his orthotics or give him proper support. And there's other evidence in the record that confirms that. Ms. McArdle noted in Mr. Riley's medical chart, and this is at page 158 in the appendix, that he told her that there were no shoes in the catalog that adequately or that conformed with the specialist recommendations, and he also submitted a declaration in the district court to the same effect. And do we know what she did at that point? Did she make any investigation on her own? No, Your Honor, that's not in the record. Just not in the record? No, we don't know what she did. It's silent at that point. And I see my time is running low, and if you have no further questions, I'll reserve my time for rebuttal. Sure. And we welcome to the podium Mr. Cree?  Cray. Mr. Cray. Thank you. May it please the Court. My name is Patrick Cray. I'm representing Appalease Sandra McArdle. The district court's order granting summary judgment in favor of McArdle should be affirmed. To address Summer Riley's opening comments and his main reply brief argument, which appears to limit the scope of the claim to a failure to elevate Riley's shoe request to the Special Needs Committee, this argument is not supported by the record. The Special Needs Committee reviewed Riley's request for high-top shoes twice, but informed Riley on December 1, 2017, and May 15, 2018, that his requests for shoes were denied and that he would have to follow the property guidelines. These memorandums are at Record Site Dock 38-2, pages 1 and 36. Riley argues it is not clear from the record whether a review of Riley's request for shoes ever occurred based off these documents and the charting that shows the Special Needs Committee reviewed Riley's chart at these meetings. But in the two memorandums sent to Riley from the committee, in the subject line of those memorandums, it states in all caps, SPECIAL NEEDS MEDICAL RESTRICTIONS REQUEST. And then a few lines down, it states in all caps, bold and underlined letters, that it is for shoes. Riley is told he must follow the property guidelines and that his shoes request was being denied. I'm still having trouble following your argument about that, because you're right that the subject of that document says SPECIAL NEEDS MEDICAL RESTRICTIONS REQUEST, but it talks only about HSU is reviewing your request, and HSU is in the process of reviewing, and your request has been denied. It nowhere says that the Special Needs Committee has reviewed. It's not a document from the Special Needs Committee, like the example Mr. Riley put in the record. It's not, it doesn't have the names of the Special Needs Committee members, like other, so I'm still having trouble understanding. And regardless of my understanding, why is this not a dispute, a genuine dispute of fact? Sure, so the Special Needs Committee is made up of health services unit members. But not just them. Correct. They're security people too. Correct, not just them, but the health services providers are the ones providing the security personnel with intel from the perspective of the patient's medical chart, and this being a subject of a special needs request with HSU intel does not seem to be a genuine issue of material fact that the Special Needs Committee has discussed this request for shoes and has ended up rejecting it based off of weighing security concerns, based off of the intel from the health services unit. And in addition, that Burgess case relied upon by the district court, they relied on a similar memorandum submitted by the Special Needs Committee to the inmate in that case, Mr. Burgess, to rely on the fact that the Special Needs Committee did in fact rely on his request. And in this case, Ms. Waterman, who was a member of the Special Needs Committee at certain times, in her affidavit, in her review of these records, she was able to determine that the Special Needs Committee did in fact review this request, and she is a member of that committee. There cannot be a genuine dispute of fact that a member of the committee reviewed these same exact documents and claimed in their affidavit that the Special Needs Committee did in fact review this request. And to the extent Riley argues that McCardle delayed in forwarding a request for the special shoes to the Special Needs Committee, there are a couple points to make there. First, Riley has no causation evidence that any purported delay caused him harm. The Special Needs Committee ultimately denied these requests on two separate occasions, and while it is unclear why they denied those requests, though likely because he failed to try any of the reasonable alternatives in the catalog in the first place, it is of no consequence because McCardle was not a member of that committee. Let me ask you this. Does your ability to prevail depend on us finding that the Special Needs Committee did in fact review and reject his request for shoes? It does not depend on that finding because McCardle, as a nurse practitioner, is able to use her own reasonable medical judgment to determine that in the specialist's opinion, the special podiatrists that were consulted, she sent this patient out for six podiatry specialists' visits over a course of 20 months. These specialists recommended that he wear athletic high-top shoes, and McCardle was able to exercise her own reasonable medical judgment and determine that these available shoes were available in the catalog for Riley to purchase. She had no authority to order those for her. She was restricted by the policy in place to not be able to order those shoes for Mr. Riley. But despite knowing that she didn't have the authority, she constantly instructed him in response to every health services request he issued that, I cannot do this for you, but in this catalog, these are high-top shoes that you can wear, and these would be suitable for your condition, and they fit in line with the specialist's recommendations. I think there's some insinuation from Riley that McCardle was rejecting or disagreeing with Dr. Jacobs' request. Even if she did, that would still not be deliberate indifference because medical professionals are allowed to disagree. But she wasn't disagreeing with his request, with the doctor's recommendations. She was instructing Riley on how we can obtain those specific kinds of shoes that would be either fitting or reasonable alternatives to those recommendations in the catalog, and Riley merely never attempted to even try that. There is evidence in the record that he did attempt to buy a mid-top shoe, and I believe there's even argument that he tries to pinpoint McCardle as the one responsible for picking out the shoe for him. And I think in response to that argument, there's no documentation in the record, first of all, that there was any shoe consultation for McCardle picking out this shoe for him. But even if that was true, taking facts in light most favorable to Riley, that is at best an isolated instance of neglect weighed against a holistic, reasonable course of care that McCardle provided to Riley. Under the deliberate indifference context, that doesn't support a claim of deliberate indifference, even if it might support a claim of medical negligence. And even if, again, we're taking these statements as true, there's no explanation from Riley as to why he never tried to obtain a high-top shoe. By his own admission, he never even ordered a high-top shoe in the first place. He never tried ordering it. Sorry. It's okay. Does McCardle contest that she had the ability to elevate his request to the Special Needs Committee or that she otherwise tried to use some sort of exception in the policy? There is indication that she consulted Waterman about a request for shoes. So she has the ability to contact Special Needs Committee members, at least Waterman from the record. That is clear. And I think in this case, the argument from Riley is that this wasn't done in a timely fashion, if it was done at all. And I just don't see that there's any reasonable timing argument here because the Special Needs Committee did review Riley's request and found that he was not a suitable candidate for avoiding the security policy in place at the time, likely because he never tried a reasonable alternative shoe in the first place. Are prisoners permitted to elevate their own request to the Special Needs Committee? Unclear to me, but I think the record supports that some of Riley's health services requests were responded to by Waterman. And Waterman, while unclear if during the events of this case she was a member of the Special Needs Committee, certainly was at some point. So I think there may be indication that that can be done. From McCarroll's perspective, though, as a nurse practitioner, advanced care provider, she's able to determine whether or not the available remedies that Riley can seek out himself, whether or not those fall in line with the specialist recommendations in this case. And clearly she thought that that's what happened here because the specialists recommend, at first, merely athletic high-top shoes, which are, from the record, clearly available in the catalog. The only attempt that Riley made at purchasing a shoe was, by his own admission, a mid-top shoe. With my remaining time, I just wanted to reiterate that the opening brief makes the argument that McCarroll ignores Riley's complaints of pain. I think it's clear from the comprehensive course of care in this case, from sending Riley out to specialists six times over a course of 20 months, ordering physical therapy, ordering the insoles, pain medication, physical therapy, responding to every health services request, that there can be no reasonable jury that would find that McCarroll ever ignored Riley's requests for pain. I will now turn it over to counsel for Ms. Waterman. Thank you. Thank you, Mr. Cray. Ms. Schmalzer? Good morning, and may it please the Court, I'm Jody Schmalzer, and I represent Jolinda Waterman. I'd like to first address the panel's question of whether or not the issue of referral to the Special Needs Committee is a dispute of material fact that would require reversal here and submit that it is not. The submittal to the Special Needs Committee comes from, and there's no dispute about this, advanced care providers, which Waterman is not. She is a health services administrator. She takes care of administrative tests. She does not treat inmates. She doesn't diagnose. She doesn't decide which specialist recommendations would be accepted and which ones are not. And she doesn't refer recommendations to the Special Needs Committee. It's not a dispute of material fact here because there's no evidence that the Special Needs Committee would have approved such a recommendation. All we have on the record here is Ms. McArdle saying it wasn't medically necessary. So under the policy, it shouldn't have been referred to the Special Needs Committee either way. Wait, does the policy say only refer medically necessary special item requests, or does the policy say, by my memory, refer special item requests? I think there has to be a medical need for that request, and I'm not sure exactly what the wording is, but something that's a medical condition that requires the accommodation. And here there wasn't a finding of that, so that's not a material fact, I think, whether or not the Special Needs Committee would approve or not approve. It would not have. There was no finding by a provider here, no referral from a provider, and no finding of medical need. Mr. Riley's tennis shoes, high-top athletic shoes, were available in the catalogs, that he chose one that didn't fit his custom orthotics, and he didn't choose to work with HSU in finding those, I guess, that would bring in his orthotics, following up, like Dr. Smith suggested, with his physical therapist and making sure that those orthotics could fit within his shoes using athletic tape. He chose none of those courses of conduct here. He just pursued his air bubble Nike Air Max shoes and nothing else. So as far as whether or not that creates a dispute of material fact, I submit that it does not. It's just there's no evidence in the record that that would have been approved either way. And the policy clearly does not support that Ms. Waterman could have made that determination or that she's a gatekeeper. That is not supported at all in the record. The district court didn't find those facts. It found the opposite. So that speculation is not sufficient, I think, to create a dispute of material fact. I am wondering, you gave us a long list of things that Ms. Waterman, as an administrator, who's over at McArdle, could not do. Why do we see her in the records doing so much with regard to Mr. Riley's case? I mean, she's viewing the facts in the light most favorable to Mr. Riley. She's commenting here and there. She is signing off on some forms. She's clearly kept up to date. So where's the line here that we should be looking at? I think it's clear that she has reviewed his medical records and that she can respond to some of his requests. But she doesn't diagnose him. She doesn't treat him. She doesn't order treatment for him. And so when Mr. Cray says she could have checked off a box on the form that says, kick this over to the Special Needs Committee, that wasn't quite right? That's incorrect. The policy doesn't support that. There's nothing in the record that could support that. No. The policy clearly states that that has to come from an advanced care provider. And that makes sense because if it's required medically, it has to come from someone who can exercise that medical judgment and make that recommendation. Here it wasn't necessary because Ms. McArdle did not believe that he required anything other than what was available in the vendor catalogs. One more thing. Why would Ms. McArdle testify that she deferred to Ms. Waterman on shoes? It's likely that that was just a restatement of the policy, which is HSU can't order shoes. If you think his needs can be met with the vendor catalogs, then it's not something that can advance to the Special Needs Committee. It's not medically necessary. It's a restatement of the policy, Your Honor. I see that my time is almost up. I'd like to switch over to and even if the court does decide that there is an inference of deliberate indifference in support of Waterman, this is a qualified immunity case. There is no clearly established closely analogous law that would have put Mr. Reilly had a constitutional right to his preferred Nike Air Max tennis shoes. In fact, cases that she was a defendant in as a Special Needs Committee member, judgment was entered on her behalf for relying on that policy and for the denial of those shoes when other specialists recommended different shoes, when they recommended the Nike Air Max or Air Bubble sold shoes. Mr. Reilly did not meet his burden here of defeating qualified immunity. He did not provide any case law that would have put Waterman on notice that any denial of shoes, whether it was her responsibility or not, was constitutionally deficient. I see my time is up. Thank you. Thank you. All right, we return to Ms. Miley. Thank you, Your Honor. So just a few points in response. So I'd love to direct the court to some of the record evidence about this dispute about whether the Special Needs Committee did or did not evaluate Mr. Reilly's medical accommodation request. So I'd first direct the court to the appendix, page 254. And as Your Honor pointed out, this is an official form, DOC-3758, titled Notice of Special Needs Committee Decision. This is the form that an inmate receives after the Special Needs Committee reviews and decides a request for an accommodation. You'll see it lists what is requested, whether it was approved or denied, and it lists the members of the committee that made that decision. And then I'd like to point the court to page 19 in the appendix. This is one of the memos that my friends on the other side pointed to, and this is what Ms. Waterman pointed to in the district court to support the assertion that the Special Needs Committee did, in fact, review and decide his request. But as was noted, this is very specifically from HSU staff and says that HSU reviewed your request for a shoe restriction. And nowhere does it say the Special Needs Committee made that decision. There's two other places in the record that Ms. Waterman points to to support the assertion that the Special Needs Committee decided this request, and those are at pages 40 and 41 in the appendix. This is Mr. Riley's medical chart, and there's two stickers on these pages, one on November 30th and one on March 9th, that says that the committee reviewed special needs in the chart. But neither of those stickers lists exactly what was considered on those dates. And we know from elsewhere in the record that on November 30th, the committee decided a request for a special pillow, and on March 9th they decided a request for Mr. Riley to eat in his cell. So the inference there being that they considered those two things on those dates and not an HSU accommodation request. So let's assume that you're correct and there is at the very least a disputed material fact as to whether or not this got to the Special Needs Committee. Is that deliberate and different? Yes, Your Honor, and this brings me to my second point in response to Ms. McArdle's argument, which is that they had discretion and they never had to refer Mr. Riley's request or the specialist-recommended treatment to the Special Needs Committee because Ms. McArdle was specifically exercising medical judgment. But in Ms. McArdle's briefing, she notes that she did not exercise medical judgment in not giving Mr. Riley the care his specialist recommended. She was relying solely on DOC policy. And that goes to our argument in our briefing where we say that Ms. Waterman and Ms. McArdle both categorically rely on HSU policy that says that they cannot provide shoes for inmates. And we don't dispute that. Mr. Riley didn't dispute that in the district court. He never said that deliberate indifference was because they did not personally provide him with the shoes. His deliberate indifference claim is based on their refusal to elevate that request to the Special Needs Committee. And the reason why it's deliberate indifference under this court's precedence is because this court has said that a medical provider can disagree with a specialist's recommendation so long as they are exercising medical judgment. But here, nobody ever exercised medical judgment because Ms. McArdle said she couldn't because of the policy. Ms. Waterman said she didn't have the authority to do it. And the Special Needs Committee never decided. They never made any assessment. So Mr. Riley's specialist-recommended care went unimplemented without any exercise of medical judgment, which puts this case in line with cases like Greeno and Zaya, where specialist-recommended care went essentially ignored without medical judgment being exercised. So I'll also briefly touch on our argument that Mr. Riley should have been appointed counsel in the district court. This court has said that it's abusive discretion for a district court to stray from this court's mandate and prove it and its progeny to conduct a particularized analysis of the litigant and of the case. And that's exactly what happened here. The district court did credit Mr. Riley's ability to organize his thoughts and effectively communicate with the court, which might have sufficed for the pleading stage. But the district court failed to credit several other factors that this court has said require particular consideration. Most notably, it failed to consider the fact that Mr. Riley was transferred to a different facility from the one where the facts underlying this case occurred. And in this court's cases in Egan and Santiago, the Seventh Circuit has held that that's a factor that must be considered and given heavy weight because it goes to the inmate's ability to do any discovery, specifically conduct depositions, which this court has held critical and deliberate in different cases like this one, which turn on a defendant's state of mind. The district court also failed to credit the case that this case involves medical evidence and that it could benefit from expert testimony. And it failed to credit the fact that Mr. Riley had an attorney who he thought he was representing him until the eve of the close of discovery. That attorney wrote him a note that said he wasn't actually representing him, even though he had sent him an engagement letter for execution and two follow-up letters saying that he was zealously representing him in this appeal and had all Mr. Riley's documents and medical evidence. So Mr. Riley not only was abandoned by that attorney, but he was entirely prevented from conducting discovery because he didn't have any of the materials he needed. And Mr. Riley moved for that appointment of counsel after the close of discovery, but before defendant's motions for summary judgment was due and before Mr. Riley's opposition was due. So even setting aside the fact that counsel in the district court could have moved to reopen discovery and conducted some of the discovery that this court has held critical and deliberate in different cases, that counsel could have asked for more time and could have better framed the factual issues that are in dispute here and how those factual issues apply to this court's case law and would have been reasonably likely to make a difference in Mr. Riley's surviving summary judgment. And under this court's precedence, that means that Mr. Riley was prejudiced by the failure to appoint counsel. I'm also happy to spend a few minutes addressing qualified immunity. So I'll note at the outset that the district court did not address qualified immunity, and though this court can, of course, affirm on any basis in the record, other than this court's precedence, that it was counsel against deciding that question when the district court passed on it in the first instance. But again, Ms. Waterman is titled to qualified immunity unless she violated a clearly established constitutional right. This court has held in the past that it is a violation of a clearly established right to do nothing in response to a serious medical condition. That's in the state of Clark. Or to withhold care because of a desire to teach a lesson or some sort of animus. That's in the Gill and Rauchow line of cases. And there's elements of both of those characteristics in this case. But even if we define the constitutional right at a more specific level of generality, there's plenty of cases in this court's precedence that would have put Ms. Waterman on notice that she was violating his constitutional rights. And that's Mr. Riley has a right to not have his specialist's recommended treatment repeatedly ignored without the exercise of medical judgment, to be blocked from access to medical care in violation of prison policy or otherwise on categorical reliance and application of administration. And he had a right to have his care providers not persist in the course of treatment they knew to be ineffective, which prolonged his pain and made his condition worse. And unless there's no other questions, we'd ask that this court reverse and remand with the assistance of counsel. Okay, thank you, Ms. Miley. And we will take the case under advisement.